UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PAONIA RESOURCES, LLC,                                                      Plaintiff,

v.                                                      Civil Action No. 3:14-cv-95-DJH

BINGHAM GREENEBAUM DOLL, LLP,                                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This is a professional malpractice case. The defendant argues that the plaintiff's claim was obtained in violation of Kentucky law, which prohibits assignment of legal malpractice claims. Because the Court concludes that there was a *de facto* assignment, the defendant's motion for partial summary judgment (Docket No. 28) will be granted, and the plaintiff's claims will be dismissed.

## I.      FACTUAL BACKGROUND

The operative facts are stipulated (*see* D.N. 28-2) and convoluted. First, a brief outline of the basic facts: the Appalachian Fuels Creditors Trust (the Trust) became the owner of Paonia in 2013. (D.N. 28-1, PageID # 148) Before it owned Paonia, however, the Trust sued Paonia, then a corporate shell, and others for more than $15 million in April 2011 in the aftermath of a settlement agreement that resolved an earlier lawsuit. (*Id.*; D.N. 28-2, PageID # 168) Bingham's predecessor had represented Paonia in the underlying dispute that led to the Trust's 2011 lawsuit. Paonia's owners revived it as a corporate entity, "agreed to a judgment against it, transferred ownership and control of Paonia to the Trust, and accepted a release of any claims against [Paonia's owners]." (D.N. 28-1, PageID # 148) Then Paonia filed this suit in February 2014. (*Id.*; D.N. 28-2, PageID # 169) According to Bingham, Paonia's suit hinges on two flawed

1

contentions: (1) that the transfer of ownership of Paonia to the Trust is not a *de facto* assignment of a legal malpractice claim; and (2) that a corporate shell "with no assets, no operations and no business prospects can suffer actual harm from a judgment that it will never be required to pay." (*Id.*)  Paonia disputes that there was an assignment, claims that Paonia alone is "directing this litigation through its own duly authorized fiduciary," and says that, if successful in this suit, Paonia will use the judgment to pay its existing liabilities (the agreed judgment).   (D.N. 29, PageID # 184)

Next, a more detailed history of the various entities and relevant transactions: Paonia was formed in 2008 solely to acquire "the assets of Bowie Resources, LLC . . . from Energy Coal Resources, LLC . . . and Colorado Holding Company."  (*Id.*, PageID # 166)  Several other business organizations owned Paonia, and, in turn, numerous individuals owned those other business organizations.  (*Id.*)  In September 2008, Energy Coal and Colorado Holding sued in Boyd County, Kentucky Circuit Court to stop Paonia's acquisition of Bowie (the "TRO Suit"). (*Id.*, PageID # 167)  Bingham represented Paonia in the TRO Suit.  (*Id.*)  Three months later, the parties settled (the "TRO Settlement").  Energy Coal and Colorado Holding agreed to pay Paonia $4,740,220 by late December 2008.  (*Id.*)  (The stipulated facts do not explain why the parties that tried to enjoin Paonia ultimately agreed to pay Paonia a settlement.)

Despite the agreement, neither Energy Coal nor Colorado Holding paid the settlement amount.  Instead, the $4,740,220 was actually paid to Paonia by Appalachian Fuels, LLC, an entity owned by Energy Coal, even though Appalachian Fuels was neither a party to the TRO Suit nor to the TRO Settlement.  (*Id.*)  In subsequent transactions, Bingham advised Paonia's former principals regarding possible claims that the Appalachian Fuels transaction "constitute[d] a fraudulent conveyance under state law."  (*Id.*, PageID # 168)

2

Paonia remitted the settlement funds to its owners and creditors, including a $223,000 transfer to Bingham's predecessor, Greenebaum Doll & McDonald, PLLC.  (*Id*.)  These disbursements left Paonia with "no assets, no liabilities, and no business operations or business prospects."  (*Id*.)  In April 2009, the Nevada Secretary of State dissolved Paonia as a business entity.  (*Id*.)

In June 2009, an involuntary bankruptcy petition was filed against Appalachian Fuels in the Bankruptcy Court for the Eastern District of Kentucky.  (*Id*.)  In April 2011, the Trust replaced Appalachian Fuels' officers.  Then the Trust sued Bowie, Paonia, and several others (the "Adversary Suit").  (*Id*.)  The Adversary Suit alleged that Appalachian Fuels, while insolvent, paid the TRO Settlement even though the settlement did not benefit Appalachian Fuels.  (*Id*.)  Thus, the Trust alleged that the TRO Settlement was "a fraudulent transfer which could be recovered from Paonia."  (*Id*.)  The parties settled the Adversary Suit in January 2013 (the "Bankruptcy Settlement").  (*Id*., PageID # 169)

Under the Bankruptcy Settlement, Paonia agreed to a judgment in the amount of $4,247,200, and the Trust agreed not to collect on the judgment from anyone but Paonia.  (*Id*., PageID # 169-70)  Notably, the Bankruptcy Settlement also made the Trust the "majority owner and managing member of Paonia."  (*Id*., PageID # 169)  The bankruptcy court approved the Bankruptcy Settlement in February 2013.  (*Id*.)  Paonia had been reinstated as a corporate entity one day before the Bankruptcy Settlement was approved.  (*Id*., PageID # 170)  It has no assets, employees, or business operations or prospects.  Its only liability is the agreed judgment.  (*Id*.)  In fact, the parties agree that "Paonia was reinstated solely to consummate the Bankruptcy Settlement."  (*Id*.)

3

One year later, the reconstituted Paonia sued Bingham, alleging that Bingham failed to advise Paonia that the TRO Settlement could be considered a fraudulent transfer. (*Id*., PageID # 169)  The Trust has never had an attorney-client relationship with Bingham and so has no malpractice claims against Bingham. (*Id*., PageID # 170)  "The Trust, through its ownership interest and status as managing member of Paonia, is ultimately in control of the Malpractice Claim litigation, though only Paonia—and not the Trust—is a party to this case." (*Id*.) Bingham's motion turns on whether Paonia is merely a defunct entity that exists only to pursue a judgment for the Trust's benefit.

## II.    STANDARD

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## III.    DISCUSSION

This case does not present genuine issues of material fact.  From the stipulated facts, the Court concludes that Paonia and the Trust have affected an impermissible legal malpractice assignment.  Therefore, the Court will grant partial summary judgment.  Because the Court

reaches this conclusion, it need not consider the parties' arguments regarding whether Paonia has shown sufficient damages to pursue a malpractice claim.

Kentucky law prohibits the assignment of legal malpractice claims.  *See, e.g.*, *Davis v. Scott*, 320 S.W.3d 87, 90 (Ky. 2010).  Many jurisdictions disfavor such assignments out of the fear that, if "permitted . . . they would become an important bargaining chip in the negotiation of settlements—particularly for clients without a deep pocket.  An adversary might well make a favorable settlement offer to a judgment-proof or financially strapped client in exchange for the assignment of that client's right to bring a malpractice claim against his attorney." *Picadilly Inc. v. Raikos*, 582 N.E.2d 338, 343 (Ind. 1991).  The worry is that allowing assignments would incentivize collusion and convert "legal malpractice into a commodity." *Kenco Enter. Nw., LLC v. Wiese*, 291 P.3d 261, 263 (Wash. Ct. App. 2013); *see also Alcman Servs. Corp. v. Samuel H. Bullock, P.C.*, 925 F. Supp. 252 (D.N.J. 1996); *Gurski v. Rosenblum & Filan, LLC*, 885 A.2d 163 (Conn. 2005).

Paonia could not have directly assigned its legal malpractice claim to the Trust.  Instead, Bingham argues, the parties to the Adversary Suit schemed to provide an end-run around Kentucky's assignment prohibition.  (*See* D.N. 28-1, PageID # 155)  Bingham contends that reviving Paonia solely to pursue a malpractice claim, entering the agreed judgment, and releasing Paonia's owners and the other defendants from liability had only one practical effect: assignment of Paonia's malpractice claim.  (*Id.*)  Bingham marshals several cases to support its proposition that Kentucky and other jurisdictions have disallowed similar "*de facto* assignments." *See, e.g., Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*, 357 F. Supp. 2d 951, 959 (E.D. Va. 2005); *Davis*, 320 S.W.3d at 91.  And though these particular facts are novel in Kentucky, Bingham cites two other courts that faced similar facts and concluded that the transactions were invalid

assignments.  *See Kenco*, 291 P.3d at 263-64; *Trinity Mortg. Cos. v. Dreyer*, No. 09-cv-551-TCK-FHM, 2011 WL 61680 (N.D. Okla. Jan. 7, 2011).

In *Kenco*, the Washington Court of Appeals dealt with a situation where one entity took ownership of a former litigation adversary, which had only one asset—a malpractice claim against the adversary's former counsel.  291 P.3d at 264.  Unlike the Trust in this case, the acquiring entity in *Kenco* disputed that the former adversary had only one asset: It argued that it also took over the former adversary because of the adversary's existing name value.  *Id*.  The *Kenco* court disagreed; it decided that the acquisition was driven solely by the desire to take control of the malpractice claim, and the court refused to let the rule against assignment "be obfuscated by clever lawyers and legal subtleties."  *Id*. at 265.  In *Trinity Mortgage*, there had been a settlement agreement that gave a litigant, Junker, a fifty-percent ownership interest in his former adversary, Trinity.  2011 WL 61680, at *3.  To the court, it became clear that "Trinity gave Junker an ownership interest for the specific and sole purpose of permitting Junker to litigate Trinity's claims against [its former counsel].  *Id*.  The *Trinity Mortgage* court disallowed the *de facto* assignment because it was "clearly against public policy."  *Id*. at *4.

The Court agrees with the analysis in *Kenco* and *Trinity Mortgage*.  Given the facts to which Paonia has stipulated, the Court concludes that there was a *de facto* assignment of Paonia's legal malpractice claim to its new owner, the Trust.

In briefing (*see, e.g.,* D.N. 29, PageID # 189-99) and at the November 2015 summary judgment hearing, Paonia argued that its corporate structure should be respected.  That is, Paonia claims that *actual* assignment has not happened, because Paonia Resources, LLC "has never 'divested itself of control' over its legal malpractice claim."  (*Id*., PageID # 191) (citing *Davis*, 320 S.W.3d at 90)  True, but this misses Bingham's point that this transaction was an assignment

in form, if not in name.  Consistent with the theme of respect for corporate structure, Paonia next argues that the Court should not look behind the corporate veil and prevent Paonia from pursuing this claim.  (*See, e.g.,* D.N. 29, PageID # 191-94)  It also takes issue with Bingham's cited cases. (*See id.*, PageID # 194 ("The Cases Cited By Greenebaum are Distinguishable or Not Controlling"))

Yet those cases were decided as they were based upon fact patterns that are nearly identical to the facts in this matter.  Paonia exists solely to pursue this malpractice claim.  (*See* D.N. 28-2, PageID # 170)  And if it recovered on that claim, the money would be used to satisfy its agreed judgment with its new owner (the Trust).  Paonia had no assets when the Bankruptcy Settlement was reached; the Trust agreed not to collect from anyone but Paonia.  (*Id.*)  Letting this claim proceed merely to respect the contrived corporate structure would require the Court to ignore the obvious.  In fact, the Court need not look behind the corporate veil; the impermissible assignment is front and center.

## IV.    CONCLUSION

Ultimately, this case presents a scenario where a limited liability company, Paonia, was brought back from the dead solely so its former adversary and new owner, the Trust, could potentially profit from a malpractice claim against Bingham.  The Trust wanted Paonia to pursue its malpractice claim so that the Trust could recover money for its agreed judgment.  The stipulated facts establish that this was a *de facto* assignment of Paonia's malpractice claim. Summary judgment is therefore appropriate.[1]  Accordingly, and being otherwise sufficiently advised, it is hereby

---

[1] The Court's order granting Bingham's request for partial summary judgment resolves all of Paonia's claims.  It does not, however, resolve the Trust's claims from the companion case that

      **ORDERED** that Defendant Bingham Greenebaum Doll's motion for partial summary judgment (D.N. 28) is **GRANTED**.  Plaintiff Paonia Resources's legal malpractice claim against Bingham is **DISMISSED** with prejudice.

      Pursuant to Federal Rule of Civil Procedure 54(b), this is a final and appealable order and there is no just reason for delay.  A separate judgment will be entered this date.

---

was consolidated with this action by order of the late Senior Judge John G. Heyburn II.  (*See* D.N. 17)